IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DAVID WALSH, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| PROGRAPHICS | : CIVIL ACTION NO. |
| COMMUNICATIONS, LLC, | : 1:18-CV-2726-LMM |
| DRUMMOND PRESS, INC., and | : |
| JOHN R. POPE, | : |
| | : |
| Defendants. | : |

**ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment [26], Plaintiff's Motion for Partial Summary Judgment [27], and Plaintiff's Motion to File Summary Judgment Out-of-Time [32]. After due consideration, the Court enters the following Order:

**I.   BACKGROUND**

Defendant, ProGraphics Communications, LLC ("ProGraphics") is a full service commercial printing business. Dkt. No. [28-1] ¶ 1. Plaintiff David Walsh worked at ProGraphics as a digital pressman from November 21, 2008 – April 3, 2018. Dkt. No. [29-6] ¶ 2. Plaintiff's job responsibilities included (1) retrieving ink and substrate from the warehouse; (2) assembling, cleaning, stocking, and preparing printers for jobs; (3) quality testing print jobs; and, (4) repairing

broken printers. Id. ¶ 3. Plaintiff's primary duties did not involve management, advertising, finances, accounting, or other similar business operations. Id. ¶¶ 7, 10. Plaintiff spent the majority of his day printing jobs and quality-testing those print jobs. Id. ¶ 4. Plaintiff also had to load the machines with paper throughout the day, which required him to make trips to and from the warehouse carrying the paper. Id. ¶ 5. Sometimes the print jobs were so large that Plaintiff had to use a pallet jack to move the paper. Id.

According to Plaintiff, he arrived at work between 7:00 and 8:00 in the morning and left between 6:00 and 7:00, resulting in 3-4 hours of overtime per day. Id. ¶¶ 17, 21. Every morning, Plaintiff spent time powering up the printers before clocking in on ProGraphics' Monarch time-keeping system. Id. ¶ 5. The parties dispute how long it took to power up the printers; Plaintiff contends it took an hour while Defendants counter that it took much less time. Id. ¶ 19. Plaintiff alleges that he often stayed after his shift ended to repair broken printers. Id. ¶ 20. When a printer broke, Plaintiff states that he would leave between 8:00 and 8:30 at night. Id. ¶ 21. Plaintiff further claims that twice a month, he would work between five and ten hours on the weekend performing maintenance and fixing broken printers. Id. ¶ 22.

However, according to Plaintiff's supervisor, Jim Wenham, Plaintiff typically arrived around 7:30 or 8:00 in the morning and left by 5:00 in the evening. Dkt. No. [29-10] ¶ 6. Mr. Wenham further stated that although Plaintiff did work some weekends, he did so rarely. Id. ¶ 12. Plaintiff also took anywhere

from a half-hour and an hour for lunch every. Id. ¶ 7; Dkt. No. [27-1] at 40:20-25; Dkt. No. [29-1] ¶ 5.

The parties dispute whether Plaintiff was an hourly or salaried employee. Dkt. No. [29-6] ¶ 8. Plaintiff contends that his pay stubs reflect that he was paid at an hourly rate of $34.58. Id. Defendants allege that Plaintiff received a salary and that his compensation did not change from week to week, regardless of whether he took vacation time, paid time off, or worked less forty hours. Dkt. No. [28-1] ¶ 3. Defendants further argue that Plaintiff received bonuses when he worked additional hours; Plaintiff denies ever receiving any such bonus. Id. ¶ 11. The parties agree that at some point, Plaintiff spoke to Mr. Wenham about his compensation but disagree as to whether Plaintiff asked for overtime pay or asked to be switched to an hourly rate. See Dkt. No. [29-6] ¶ 16. It is undisputed that Plaintiff was earning more than the other pressman working at ProGraphics. Dkt. No. [27-1] at 92-93.

Sometime in December 2017, Plaintiff went out on disability leave and never returned to work. Dkt. No. [28-1] ¶ 12. He did not perform any work as a digital pressman in 2018. Id. ¶ 13. On or about March 30, 2018, Drummond Press, Inc. ("Drummond"), purchased 100% of the membership interest in ProGraphics. Id. ¶ 15. ProGraphics is now a wholly owned subsidiary of Drummond. Id. ¶ 16. Plaintiff's last official day of employment was April 3, 2018. Id. ¶ 13. During the time Plaintiff was employed, Drummond did not determine

3

how much he was paid, set his salary or bonuses, or arrange his work schedule. Id. ¶¶ 17-18.

Defendant John R. Pope served as the President of ProGraphics throughout Plaintiff's employment. Dkt. No. [29-6] ¶ 1. Mr. Pope was not Plaintiff's direct supervisor—more specifically, he did not supervise Plaintiff's day-to-day activities, set his work schedule, or determine whether Plaintiff was to stay late or work on a weekend. Dkt. Nos. [28-1] ¶¶ 8-10. Mr. Pope did approve, upon the recommendation of other members of management at ProGraphics, bonuses that Plaintiff allegedly received and was one of three people responsible for ProGraphics' overtime policy. Id. ¶ 11; Dkt. No. [31] ¶ 6. During 2015, 2016, and a large part of 2017, Mr. Pope was acting as his wife's primary caretaker and most days only worked from about 10:30 a.m. to 2:00 or 3:00 p.m., with some exceptions. Dkt. No. [28-1] ¶¶ 8-10. Accordingly, Mr. Gene Hindman, the then-executive Vice President of ProGraphics, ran much of ProGraphics' operations during that time. Dkt. No. [29-8] ¶ 12.

On June 4, 2018, Plaintiff brought suit against ProGraphics, Drummond, and John Pope alleging a violation of the Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA"). Dkt. No. [1]. Defendants Drummond and Pope have moved for summary judgment on all of Plaintiff's claims. Dkt. No. [26]. In turn, Plaintiff has moved for partial summary judgment on his overtime claim, leaving only the question of how much overtime he worked and damages outstanding. Dkt. No. [27].

4

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. Id. (citations omitted). All reasonable doubts, however, are resolved in the favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

The same standard of review applies to cross-motions for summary judgment, but the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts. S. Pilot Ins. Co. v. CECS, Inc., 52 F. Supp. 3d 1240, 1242-43 (N.D. Ga. 2014) (citing Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005)). Each motion must be considered "on its own merits, [with] all reasonable inferences [resolved] against the party whose motion is under consideration." Id. at 1243.

### III. DISCUSSION

As a preliminary matter, Mr. Walsh filed his Motion [27] on February 4, 2019, five days after the deadline for dispositive motions. Defendants submitted a Response Brief [29] in which they argued that Mr. Walsh's Motion was untimely and should not be considered. Mr. Walsh subsequently filed a Motion to File Summary Judgment Out-of-Time [32].

6

The enforcement of deadlines is within the discretion of the Court. See, e.g., Staley v. Owens, 367 F. App'x 102, 105 (11th Cir. 2010). Federal Rule 6(b)(1) states that, when a party files a motion after the time for doing so expires, a court may, for good cause, extend the time "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).[1] Here, Plaintiff missed the deadline for filing his Motion because he miscalculated the end of discovery; he then filed his Motion only a few days after the deadline. See Dkt. No. [32] at 1. The Court believes that this constitutes excusable neglect. Plaintiff's Motion to File Summary Judgment Out-of-Time [32] is therefore **GRANTED.** As such, the Court now turns to the parties' cross motions for summary judgment.

### a. Defendants' Motion for Summary Judgment

Defendants argue that Plaintiff's claims against Drummond and Mr. Pope cannot survive summary judgment because (1) Plaintiff was never employed by Drummond and thus performed no overtime work for Drummond; and (2) Mr. Pope is not an employer as defined by the FLSA. See Dkt. No. [26-1] at 1-2. The Court will address each issue in turn.

---

[1] Relying heavily on the unpublished case, Destra v. Demings, 725 F. App'x 855, 859 (11th Cir. 2018), Defendants urge the Court to deny Plaintiff's Motion pursuant to Rule 16(b)'s more stringent "good cause" standard. See Dkt. No. [34] at 2. However, the scheduling order at issue in Destra enumerated a *specific* date—January 16, 2017—as the deadline for dispositive motions. 725 F. App'x at 856. By contrast, here, the parties' scheduling order generally states that motions for summary judgment are due "within thirty (30) days after the close of discovery, unless otherwise permitted by court order." Dkt. No. [18] at 7. As such, the Court is not convinced that Destra compels the Court to proceed under Rule 16(b). Even so, the Court finds that Plaintiff meets this higher standard.

      i. *Drummond*

As defined in the FLSA, the term "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). "An entity suffers or permits an individual to work if, as a matter of economic reality, the individual is dependent on the entity." Antenor v. D & S Farms, 88 F.3d 925, 929 (11th Cir. 1996) (internal quotation omitted). To recover for uncompensated overtime work under the FLSA, Plaintiff must show that (1) he was "suffered or permitted" to work overtime without compensation; and (2) his employer knew or should have known of the overtime work. See Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1314-15 (11th Cir. 2007).

According to Defendants, Plaintiff has failed to establish that he suffered or was permitted to work by Drummond because Drummond purchased ProGraphics four days before Plaintiff's last day of work and several months after Plaintiff went out on disability leave. See Dkt. No. [26-1] at 7. Plaintiff does not oppose this argument and it is undisputed that Plaintiff does not claim to have worked overtime without compensation in 2018. See Dkt. No. [26-1] at 7. Moreover, as Drummond did not purchase ProGraphics until 2018, Plaintiff cannot show that he performed overtime work—or any work at all—for Drummond.[2] Accordingly, Plaintiff has no claim against Drummond for unpaid

---

[2] As to whether Drummond would be liable as ProGraphics' successor, Plaintiff offers no argument on this issue and has left the issue of Drummond's liability unopposed.

8

overtime and Defendants' Motion for Summary Judgment as to Drummond is **GRANTED.**

  ii. *Mr. Pope*

The FLSA creates a private right of action against an employer who violates the overtime provisions set forth in 29 U.S.C. § 207. An employer is broadly defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The inquiry under the FLSA as to whether one is an 'employer' for liability purposes is ultimately a legal determination, but requires the district court to make subsidiary factual findings." Russell v. Promove, LLC, 1:06-CV-00659-RWS, 2007 WL 2274770, *3 (N.D.Ga. Aug. 7, 2007) (citing Patel v. Wargo, 803 F.2d 632, 634 & n.1 (11th Cir. 1986)).

Relevant to the instant case, a corporate officer is individually liable under the FLSA as an employer if "he has 'operational control of a corporation's covered enterprise,' which may be involvement in the day-to-day operation of the company or direct supervision of the employee at issue." Moore v. Appliance Direct, Inc., 708 F.3d 1233, 1237 (11th Cir. 2013) (quoting Patel, 803 F.2d at 637-38)). "Whether an individual falls within this definition does not depend on technical or isolated factors but rather on the circumstances of the whole activity." Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008) (internal quotations omitted). In this vein, the Eleventh Circuit has recognized that "a supervisor's title does not in itself establish or preclude his

or her liability under the FLSA." Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1310 (11th Cir. 2013).

The Court is not persuaded by Plaintiff's contention that Mr. Pope is an employer within the meaning of the FLSA. Plaintiff first argues that Mr. Pope is an employer because Defendants stated in their Answer that Plaintiff "was employed by Defendants from November 2008 until April 2, 2018." Dkt. No. [28] at 4 (citing Dkt. No. 13 ¶ 7). According to Plaintiff, by defining "Defendants" to include Mr. Pope, Defendants admitted in their Answer that Mr. Pope is an employer. Id. 4 n.1. But Plaintiff has not alleged any facts supporting such a legal conclusion—indeed, outside the introduction, Plaintiff only mentions Mr. Pope once in his entire Complaint. See Dkt. No. [1] ¶ 4. Thus, contrary to Plaintiff's belief, Defendants' general admission of a specific legal conclusion alleged in the Complaint is of questionable importance for purposes of summary judgment. See Almand v. DeKalb Cty., Ga., 103 F.3d 1510, 1514 (11th Cir. 1997) ("Plaintiff's pleading of the legal conclusion on color of state law in the complaint and Defendant's admission in the answer are of questionable importance."); Izquierdo v. Mako Wash, Inc., No. 8:13-cv-2940-T-27AEP, 2014 WL 12575820, at *1 (M.D. Fla. May 28, 2014) (finding that the defendants' admission of individual and enterprise coverage in their answer was of "questionable importance" at the summary judgment stage because the plaintiff had not alleged any facts to support such conclusions).

Nor does the evidence in the record support finding that Mr. Pope was Plaintiff's employer. First, Mr. Pope did not directly supervise Plaintiff or set his work schedule. Dkt. No. [26-5] ¶¶ 5-7. Second, nothing in the facts suggests that Mr. Pope was sufficiently involved in ProGraphics' day-to-day operations to be held liable as an employer. Id. Mr. Pope was absent throughout much of 2015, 2016, and 2017 due to his wife's illness and left Mr. Hindman in charge of most of the operational decisions. Id. ¶ 4. Mr. Pope is not liable simply by virtue of his presence on ProGraphics' premises; indeed, as the Eleventh Circuit has recognized, "unexercised authority is insufficient to establish liability as an employer." Alvarez Perez, 515 F.3d at 1161. Moreover, Plaintiff's general assertion that Mr. Pope worked "closely with Martin Kendall and Gene Hindman" to manage the company does not by itself create a genuine dispute of material fact regarding whether Mr. Pope was substantially involved in the daily operations of ProGraphics or directly supervised Plaintiff. In other words, the simple fact that Mr. Pope—as President of ProGraphics—could have played a larger role in the daily operations of the company is not sufficient to establish that he actually exercised the necessary control to impose individual liability under the FLSA. Cf. Patel, 803 F.2d at 638.

Third, the record demonstrates that Mr. Pope was not significantly involved in setting Plaintiff's pay rate or overtime compensation. Plaintiff argues that because Mr. Pope was one of three persons responsible for the overtime policy at ProGraphics, he determined Plaintiff's overtime compensation. See Dkt.

11

No. [28] at 5. But the evidence provided does not support such an inference. Although Mr. Pope approved certain alleged bonuses, he did so only upon the recommendation of other members of management. Dkt. No. [26-5] ¶ 8. Further, in his affidavit, Mr. Pope stated that he did not set Plaintiff's compensation or rate of pay. Id. Plaintiff has provided no evidence to the contrary;[3] thus, the Court is hard pressed to find that Mr. Pope played a role in causing the alleged FLSA violations. See Lamonica, 711 F.3d at 1314 ("[O]ur primary concern is the supervisor's role in causing the FLSA violation"); compare Godburn v. Adams Tile & Terrazzo, Inc., No. 3:14-cv-114 (CAR), 2017 WL 1217172, at *4 (M.D. Ga. Mar. 31, 2017) (refusing to find a company officer/owner liable as an employer under the FLSA where the plaintiff failed to show that the company officer/owner's approval of proposed pay raises played a role in causing plaintiff's FLSA violations).

As a final note, Plaintiff's reliance on Moore misses the mark. See Dkt. No. [28] at 5. In Moore, the Eleventh Circuit upheld a finding of individual liability where the plaintiffs presented ample evidence that the individual defendant guided company policy, gave instructions to managers regarding job duties, directed that the plaintiffs not be given certain subcontracts, and was the ultimate decisionmaker. 708 F.3d at 1237. Here, by contrast, Plaintiff has not alleged or set forth any facts showing the Mr. Pope engaged in any similar

---

[3] Plaintiff has failed to take any depositions in this litigation. See Dkt. No. [30] at 4 n.1.

activities. Indeed, Plaintiff concedes that Mr. Pope was not Plaintiff's direct supervisor and did not set his work schedule. Dkt. No. [28-1] ¶¶ 8-10. Thus, the Court finds as a matter of law that Mr. Pope cannot be held individually liable under the FLSA as Plaintiff's employer; Defendants' Motion for Summary Judgment as to Mr. Pope is therefore **GRANTED.**

### b. Plaintiff's Motion for Partial Summary Judgment

Plaintiff has moved for summary judgment on Plaintiff's overtime claim, Mr. Pope's individual liability, and enterprise coverage. See Dkt. No. [27] at 2, 22-24. As discussed *supra*, there is no genuine issue of fact with respect to Mr. Pope's liability as an employer—the record demonstrates that he is not an employer within the meaning of the FLSA. Accordingly, Plaintiff's Motion for Partial Summary Judgment is **DENIED** as to Mr. Pope's individual liability. Turning to the remainder of Plaintiff's Motion, the Court will first consider whether Plaintiff is an exempt employee under the FLSA.

#### i. *Exemptions*

Congress enacted the FLSA in 1938 to provide minimum wage and hour protections for workers. See Allen, 495 F.3d at 1311. To that end, 29 U.S.C. § 207 requires employers to pay time and a half for hours that an employee works in excess of the standard forty hour workweek. 29 U.S.C. § 207(a)(1). Section 213 of the FLSA, however, lists a host of exemptions to the minimum wage and maximum hour requirements. 29 U.S.C. § 213. "The exemptions are to be construed narrowly, and the employer shoulders the burden of establishing that

13

it is entitled to an exemption." Alvarez Perez, 515 F.3d at 1156 (internal quotation omitted).

In their Answer, Defendants assert as an affirmative defense that Plaintiff qualifies for "one or more" of the FLSA's overtime exemptions. Dkt. No. [13] at 7. In moving for summary judgment, Plaintiff argues that Defendants have failed to establish that Plaintiff falls within any exemption. See Dkt. No. [27] at 4. Defendants do not address this issue in their briefing, rendering it unopposed. The Court therefore agrees that Defendants have not proved by "clear and affirmative evidence" that Plaintiff is exempt under the FLSA. Lee v. MegaMart, Inc., 223 F.Supp.3d 1292, 1297 (N.D. Ga. 2016) (citing Birdwell v. City of Gadsden, Ala., 970 F.2d 802, 805 (11th Cir. 1992)). As such, Plaintiff's Motion for Partial Summary Judgment is **GRANTED** as to this issue.

  ii. *Overtime*

As set forth above, to recover for uncompensated overtime work under the FLSA, Plaintiff must show that (1) he worked overtime without compensation; and (2) ProGraphics knew or should have known of his overtime work. See Allen, 495 F.3d at 1314-15. The amount and extent of overtime work must be shown "as a matter of just and reasonable inference." Rance v. Rocksolid Granit USA, Inc., 292 F. App'x 1, 1 (11th Cir. 2008). An employer's knowledge can be established as either actual or constructive. See Allen, 495 F.3d at 1318-21. In the instant case, the Court finds a genuine dispute of fact as to both elements.

With regards to whether Plaintiff actually worked overtime without compensation, Plaintiff claims that he routinely worked 3-4 hours of overtime a week, arriving between 7:00 – 8:00 in the morning and leaving between 6:00 – 7:00 in the evening unless a printer broke. See Dkt. No. [27] at 21. Plaintiff contends that he performed additional work before and after his jobs were time-stamped in the Monarch time-keeping system. Id.[4] By contrast, Plaintiff's supervisor stated that Plaintiff left everyday by 5:00 and took an hour lunch break. See Dkt. No. [29-10] ¶¶ 6, 7. And, with respect to his weekend work, Plaintiff testified during his deposition that he has no record of any overtime not reflected in the Monarch time-keeping system. See Dkt. No. [27-1] at 48-49. Thus, Plaintiff has not met his burden in demonstrating that no genuine dispute of material fact exists as to whether he worked overtime without compensation.

Even if it were clear that Plaintiff had worked overtime, summary judgment would still not be warranted because, to prevail, Plaintiff must also establish that ProGraphics knew or should have known that he was working overtime. See Sidell v. MedMark Servs. Inc., No. 2:16-cv-176-RWS, 2017 WL

---

[4] Plaintiff argues for the first time in his Reply Brief that the Monarch time keeping system's records show that Plaintiff worked compensable overtime for 36 weeks over the period of one year. See Dkt. No. [33] at 5. Even if the Court were to consider an argument raised for the first time in a reply, such records do not obviate all genuine issues of material fact. See Rindfleisch v. Gentiva Health Servs., Inc., 22 F. Supp. 3d 1295, 1301 (N.D. Ga. 2014) ("As a general rule, federal courts do not consider arguments that are presented for the first time in reply brief."). Plaintiff must show that he worked overtime *without compensation* and these records alone do not establish as much.

6994574, at *5 (N.D. Ga. Aug. 3, 2017). Unlike actual knowledge, constructive knowledge is measured by whether the employer had "the opportunity through reasonable diligence to acquire knowledge." Reich v. Dept' of Conservation & Nat. Res., 28 F.3d 1076, 1082 (11th Cir. 1994) (citation omitted). Knowledge by supervisors and management is typically imputed to the employer. See Sidell, 2017 WL 6994574, at *5 (citing Brennan v. Gen. Motors Acceptance Corp., 482 F.2d 825, 827-28 (5th Cir. 1973)).

Plaintiff cannot carry his burden of showing that there is no genuine dispute of material fact in this regard. Plaintiff did not take any supervisor depositions, which could have provided direct evidence of actual knowledge. Dkt. No. [29] at 6; see Sidell, 2017 WL 6994574, at *5. Rather, in support of his motion for summary judgment, Plaintiff simply claims that it is "unlikely that Defendants never saw Plaintiff repairing printers after his shift or saw him working on the weekend." Dkt. No. [27] at 22. But Plaintiff's conclusory allegation, by itself[5], is not sufficient to establish that ProGraphics knew or

---

[5] Plaintiff argues for the first time in his Reply Brief that ProGraphics knew that he was working overtime because Plaintiff asked Mr. Wenham for overtime on one occasion. See Dkt. No. [33] at 8. Defendants, in turn, characterize the nature of the conversation quite differently, claiming that Plaintiff asked Mr. Wenham about switching to an hourly rate of pay. See Dkt. No. [29-6] ¶ 16. The disputed nature of the conversation renders summary judgment inappropriate. Moreover, to the extent that Mr. Wenham knew of Plaintiff's alleged overtime based on the payroll report he prepared, his knowledge is disputed and therefore remains a question of fact for the jury all the same. See Allen, 495 F.3d at 1321 ("We believe that these arguments should be made to a jury.").

should have known about Plaintiff's overtime, especially considering that Plaintiff's supervisor offered a conflicting version of events. See Dkt. No. [29-10] ¶ 12; see also, Sidell, 2017 WL 6994574, at *6 ("[S]imply arriving at work is insufficient to impute knowledge that an employee is actually performing work.").[6] Moreover, as set forth above, it is not clear from the record that Plaintiff even worked overtime; it follows that there thus remains a question as to whether ProGraphics knew or should have known of any alleged overtime.

Plaintiff further argues that Defendants have improperly attempted to shift the burden to Plaintiff when ProGraphics, as an employer, has a duty to exercise control in the workplace and to prevent undesired work from being performed. See Dkt. No. [33] at 7. Plaintiff, however, apparently misunderstands the nature of his burden at this stage in litigation—that is, his burden to show that there is no genuine dispute as to whether ProGraphics knew or should have known of Plaintiff's alleged overtime. See Hickson Corp., 357 F.3d at 1260. While it is true that employers have an obligation to ensure unwanted work is not performed, Plaintiff has not presented any evidence showing that ProGraphics knew or should have known that Plaintiff was working overtime and still failed to curtail unwanted overtime. Compare Reich, 28 F.3d at 1083-84 (finding that the district court erred in finding that employer could not be charged with knowledge where

---

[6] Plaintiff's attempt to distinguish this case solely on the basis that the plaintiff in Sidell worked in the service industry is unexplained and unavailing. See Dkt. No. [33] at 9.

17

employer had multiple reasons to be aware of unreported overtime, including a state-commissioned study).

In short, Plaintiff sets forth no specific facts in support of his motion, relying solely on his own conclusory assertion that it is "unlikely" that his supervisors never saw him working overtime. Dkt. No. [27] at 22. It is axiomatic that Plaintiff cannot satisfy his burden based on "mere conclusory allegations," particularly where—as here—Defendants have proffered facts contradicting his allegations. Anderson, 477 U.S. at 247-48. Accordingly, Plaintiff's Motion for Summary Judgment as to his overtime claim is **DENIED**.

      iii. *Enterprise Coverage*

An employee is subject to enterprise coverage if he is "employed in an enterprise engaged in commerce or in the production of goods for commerce." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298-99 (11th Cir. 2011) (citing 29 U.S.C. § 207(a)(1)). Pursuant to Section 203 of the FLSA, an enterprise is engaged in commerce or the production of goods for commerce if it (1) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or material that have been moved in or produced for commerce by any person; and (2) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000. 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

Plaintiff asserts that he is entitled to summary judgment on the issue of enterprise coverage because ProGraphics has gross revenues "far in excess" of

$500,000. See Dkt. No. [27]. Yet as Defendants point out, Plaintiff has failed to submit any records or financial statements to this effect. See Dkt. No. [29] at 7 n.2. Indeed, Plaintiff's only evidence of ProGraphics' revenue comes from Plaintiff's own declaration that ProGraphics made "at least $26 million a year," which Defendants dispute. Dkt. No. [29-6] ¶ 25. Plaintiff has also described himself as a blue collar worker with "no discretion or official capacity whatsoever." Dkt. No. [27] at 16. Because Plaintiff has failed to carry his burden to show that no genuine dispute of material fact exists as to enterprise coverage, Plaintiff's request for summary judgment on this issue is **DENIED.**

## IV.   CONCLUSION

Defendants' Motion for Summary Judgment [26] is **GRANTED**. Plaintiff's Motion to File Summary Judgment Out-of-Time [32] is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment [27] is **GRANTED IN PART AND DENIED IN PART.** Specifically, Plaintiff's overtime claim against ProGraphics and the issue of enterprise liability remain.

The parties are **DIRECTED** to submit their proposed pretrial order within **thirty (30)** days of entry of this Order.

**IT IS SO ORDERED** this 21st day of May, 2019.

_____
Leigh Martin May
**United States District Judge**

19